DAVIS, District Judge,
concurring:
I concur in the judgment and in Parts IIV and VI of Judge Hamilton’s thorough opinion. I respectfully write separately because, as to Part V, I would deny the petition for review on a different ground.
Section 401 of the Clean Water Act requires a certification from the state for activities that may result in any “discharge into navigable waters.” 33 U.S.C. § 1341(A)(1). To have a “discharge” within the meaning of the Act there must be a discharge from a “point source.” ONDA v. USFS, 550 F.3d 778, 783-84 (9th Cir.2008).
*735 In S.D. Warren, the Supreme Court “held that the term ‘discharge’ is not limited to the ‘discharge of a pollutant,’ but may also include the ‘flowing or issuing out’ of non-pollutants, or even water.” Id. at 783. The dams and turbines at issue in S.D. Warren were undeniably “point source[s]” within the meaning of 83 U.S.C. § 1362(14), and the parties therefore did not question such classification. The Court’s detailed discussion of the Clean Water Act’s remedial purpose was thus made in the context of an unquestioned “point source” out of which water was indisputably being emitted.
Here, I would not reach the question of whether AES’s proposed deep channel dredging would result in a “discharge” from a “point source,” but would instead deny the petition for review on the basis that Maryland’s decision was not arbitrary and capricious with respect to Maryland’s third justification for denial: “Final Pipeline Route and Avoidance/Minimization of Pipeline Impacts.” * (J.A. 5). Maryland’s denial on such point appears rationally tied to the facts of the case and AES fails to overcome the presumption in favor of deeming the agency action valid. Ohio Valley Envtl. Coalition, 556 F.3d at 192.
Maryland’s stated justification for denial includes AES’s failure to provide sufficient information such that Maryland could “determine if the proposed pipeline minimizes impacts to wetlands and waterways or otherwise violates applicable water quality standards.” (J.A. 5). The information purportedly lacking includes the method of crossing and impacts from crossing a sensitive waterway called “Deer Creek.” Maryland’s concerns regarding the impacts on Deer Creek’s water quality were consistently supported by findings of the National Oceanic and Atmospheric Administration (NOAA), which in June of 2008 asserted that an “open-cut” crossing at Deer Creek was “not-acceptable” due to impacts on spawning habitat. (J.A. 904). As recently as January of 2009, approximately three months prior to the issuance of Maryland’s denial letter, NOAA reiterated its position, this time in boldface text, that a horizontal directional drilling (HDD) crossing and not an “open cut” crossing must be utilized to protect the sensitive Deer Creek watershed. (J.A. 2155). Maryland’s contention that it lacked sufficient information to determine the water quality impacts stemming from the Deer Creek crossing is further supported by the fact that less than a month prior to the issuance of Maryland’s denial letter the Corps, at AES’s request, suspended its review of AES’s federal permit application due to lack of information, including the lack of “final drawings” of proposed stream crossings. (J.A. 2481-82). Finally, a letter from Maryland to AES, discussing a separate permit application, indicates that both the method and impacts of several stream crossings, including Deer Creek, remained unresolved several weeks after Maryland denied the water quality certification. (J.A. 2488).
Based on the foregoing, I would conclude that AES fails to establish that Maryland acted in an arbitrary and capricious manner in denying the permit on this ground.

 AES does not challenge the fact that stream crossings along the pro posed pipeline route may result in a discharge into navigable waters.” 33 U.S.C. § 1341(A)(1).